# Equitable Building and Loan Society v. James P. Fritze, for Use, etc.

1. BUILDING AND LOAN ASSOCIATIONS—*Contracts Not Authorized by Law.*—A contract between the board of directors of a building and loan association and its vice-president, fixing the term of his office and his compensation as manager, is not within the powers granted or implied to the association. Such a contract is illegal and void, and it is contrary to public policy and good morals to permit it to be enforced.

2. SAME—*Legitimate Purposes of their Creation.*—The proper and legitimate purposes for which building associations are created are to enable persons to combine and invest their savings to their mutual advantage, so that from time to time any individual among them may receive,

Equitable Building & Loan Society v. Fritze.

out of the accumulations, a sum by way of a loan, wherewith to buy or build a house, mortgaging it to the association as security for the money borrowed, and ultimately making it absolutely his own by paying off the incumbrances out of his subscriptions. It is only so far as they serve these purposes, and are confined to these objects, that their acts fall properly within the powers granted. When they transgress these limits they are *ultra vires*.

3. SAME—*Establishment of Agencies in Various States.*—The establishment of agencies in various States, with a large and scattered body of stockholders and borrowers, pledging property far beyond the personal inspection and control of the officers, is not authorized by our statute, and is outside the object for which such associations are created.

4. SAME—*Compensation of Officers.*—The law under which building and loan associations are organized provides that the officers shall consist of president, vice-president, secretary and treasurer; that the secretary only shall be entitled to compensation, in such amount as may be provided for in the charter, and is in effect an enactment that the president, vice-president and treasurer shall not be entitled to compensation.

5. CONTRACTS—*Illegal—Right of Action Under the Common Counts.*—The complete execution of an illegal contract upon one side does not give a right of action under the common counts.

**Assumpsit**, for services rendered. Trial in the Circuit Court of Peoria County; the Hon. THOMAS M. SHAW, Judge, presiding. Finding and judgment for plaintiff; appeal by defendant. Heard in this court at the December term, 1898. Reversed. Opinion filed May 19, 1899.

WINSLOW EVANS, attorney for appellants; JOHN J. CROWDER, of counsel.

The act of 1879, under which the defendant was incorporated, provides that whenever any number of persons, not less than five, may desire to become incorporated as a mutual building, loan and homestead association for the purpose of building and improving homesteads and loaning money to the members thereof only, they shall make a statement to that effect, under their hands and seals, duly acknowledged before some officer, etc. Laws of 1879, p. 83.

The purpose and scope of such incorporations under this statute has been expressed as follows:

" To all practical intents it may be said to be to enable a number of associates to combine and invest their savings to

mutual advantage, so that, from time to time, any individual among them may receive, out of the accumulation of the pittances which each contributes periodically, a sum, by way of loan, wherewith to buy or build a house, mortgaging it to the association as security for the money borrowed, and ultimately making it absolutely his own by paying off the incumbrance out of his subscription. It is only so far as they serve these purposes and are confined to the objects necessarily involved therein that the acts of building associations fall properly within the powers granted. As soon as they transgress these limits they are *ultra vires.*" Rhodes v. Missouri Savings Co., 173 Ill. 621–629.

By section three of the act of 1879 the commissioners were required to report their proceedings, including therein a copy of the notices provided for in the foregoing section, a copy of the subscription list, a copy of the charter and by-laws adopted by the association, and the names of the directors elected and their respective terms of office, which report shall be sworn to by at least a majority of the commissioners, and shall be filed in the office of the secretary of State. The secretary of State was required thereupon to issue a certificate of complete organization of the corporation, making a part thereof a copy of all papers filed in his office in and about the organization of the corporation and duly authenticated under his hand and the seal of State, and the same to be recorded in the office of the recorder of deeds in the county in which the principal office of such company is located. Upon the recording of the said copy, the corporation should be deemed fully organized, etc. Laws of 1879, p. 84, Sec. 3.

By the same act, in section five, it is provided:

" The corporate powers shall be exercised by the board of directors, provided the number of directors shall not be increased or diminished or their term of office changed without the consent of the owners of two-thirds of the shares of stock. The officers of the company shall consist of a president, vice-president, secretary and treasurer, to be elected at the annual meeting of the board of directors, as may be provided for in the charter and by-laws of the association, provided that the secretary only shall be entitled to compensation, and in such amount as may be provided for in the char-

ter of such association, and provided that the treasurer shall give bond and security to be approved by the board of directors." Laws of 1879, 284, Sec. 5.

No provision is contained in the act of 1879 authorizing or permitting the amendment of the charter or by-laws required by section three of the act, and which become a part of the society's articles of incorporation, by any act of the society itself either at a stockholders' meeting or a directors' meeting. Law of 1879, pp. 83–7.

There was no provision of the act authorizing the incorporation of building, loan and homestead associations to alter or amend its by-laws until the amendment of section three of the act, which went into force and effect July 1, 1893. By this amendment, it was provided that subsequent amendments or alterations of the by-laws should be submitted to the secretary of State and be approved by the attorney-general and be recorded in like manner as the original by-laws before the same should become operative, and only such by-laws as should have been submitted, approved and recorded as therein provided, should be deemed operative. A copy of such by-laws and amendments were required to be filed also with the auditor of public accounts. Laws of 1893, p. 84, Sec. 3.

No authority or power was given any association organized under this act by its directors or its stockholders to fix or regulate the compensation of any of its officers until the amendment of 1897, and then it was only provided that the directors might annually fix and determine the compensation of the secretary and treasurer when the same was not provided for in the by-laws. Laws of 1897, p. 167, Sec. 5 A.

The rule for construing the powers of corporations organized under general law and one created by special statute are the same. The powers especially enumerated, and such other powers as are incidental or necessary to carry those powers into effect, but none others, may be exercised by the corporation. Rockhold v. Canton Masonic, etc., Association, 129 Ill. 440; Reese on Ultra Vires, Secs. 3 and 8.

The rule of construction applicable to statutory provisions is that every power that is not clearly granted is withheld, and that any ambiguity in the terms of the grant must operate against the corporation and in favor of the public.

And if the power claimed is withheld, it is regarded as a prohibition against the exercise of such power. American Trust Co. v. M. & N. W. R. R. Co., 157 Ill. 641.

If a power or purpose of incorporation is expressed in the certificate issued by the secretary of State that is not authorized by the act under which the corporation is incorporated, such additional power or authority is a nullity and all acts done under it are void. Granger's, etc., Ins. Co. v. Kamper, 73 Ala. 325; Oregon Ry. Co. v. Oregonian Ry. Co., 130 U. S. 1; Reese on Ultra Vires, Sec. 3.

Whether a corporation is created by general or special law, it may exercise only those powers expressly given it and such other powers as are necessary to carry the expressed powers into effect. Implied powers must be bounded by the purpose of the corporate existence and the terms of the charter, and acts which tend only by indirection to promote the interests and chartered objects of the corporation can not be justified by implication, but are *ultra vires*. People v. Pullman Car Co., 175 Ill. 125.

An incidental or implied power is one that is directly and immediately appropriate to the execution of the specific power granted and not one that has slight or remote relation to it. Safety Insulated Wire & C. Co. v. Mayor, etc., of Baltimore, 20 C. C. A. 453; Hood v. R. R. Co., 22 Conn. 1.

A contract or act of a corporation which is *ultra vires* in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature, is not voidable only, but wholly void and of no legal effect, and in such case, even though there has been full performance, neither party to such contract can be estopped by assenting to it or by acting upon it to show that it was void, and no recovery can be had upon it. Cent. Transpor-

tation Car Co. v. Pullman Palace Car Co., 139 U. S. 24; Davis v. Old Colony Ry. Co., 131 Mass. 264; McCormick v. Market National Bank, 162 Ill. 100; American Trust Co. v. M. & N. W. R. R. Co., 157 Ill. 641; Durkee v. People, 155 Ill. 354; McCormick v. Market Nat. Bank, 165 U. S. 538; California Bank v. Kennedy, 167 U. S. 362; Marble Co. v. Harvey, 92 Tenn. 115; Lucas v. Whiteline Transfer Co., 70 Ia. 541; O. & M. R. R. Co. v. I & C. R. R. Co., 5 Am. Law Reg. (new series), 733.

DAN. R. SHEEN and ARTHUR KREISMAN, attorneys for appellee.

The common counts alone will lie when the work has been done and the contract executed. In an action upon an account stated, the original form of evidence of the debt is unimportant, for the stating of the account changes the character of the cause of action, and is in the nature of a new undertaking. The action is founded not upon the original contract but upon the promise to pay the balance ascertained. Throop v. Sherwood, 4 Gil. 92, 98.

Where a director performs services outside of his duties as such director, by proper employment by the board of directors, he may recover compensation for services so rendered. The board of directors has control of the property and funds of the corporation, and had they chosen to consider it part of appellee's duty as a director they would not have unanimously voted him a compensation. Holder v. L. B. & M. Ry. Co., 71 Ill. 107.

Because a plaintiff was a member of the board of directors is no reason why he should not be entitled to compensation for services performed as a duly appointed agent before the services were rendered. L. B. & M. Ry. Co. v. Cheeney, 87 Ill. 446; Cheeney v. L. B. & M. Ry. Co., 68 Ill. 575.

Even if the contract is *ultra vires*, the work was done, the same was accepted by appellant without any objection, the contract so far as appellee is concerned is executed. Under these circumstances appellant is estopped from setting up the defense of *ultra vires*.

This is especially so when the contract is not immoral in itself, or the same is not expressly prohibited by statute. McNulta v. Corn Belt Bank, 164 Ill. 451; Kadish v. G. C. E. L. & B. Ass'n, 151 Ill. 531; Benefit Ass'n v. Blue, 120 Ill. 128; Bradley v. Ballard, 55 Ill. 415; Darst v. Gale, 83 Ill. 136.

A director may enter into a contract with his corporation, Harts v. Brown, 77 Ill. 226; Beach v. Miller, 130 Ill. 169; Merrick v. Peru Coal Co., 61 Ill. 479.

Mr. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

James P. Fritze brought this action of assumpsit against appellant to recover for services rendered appellant under a written contract.   He filed a special count upon the contract, and the common counts.   Defendant filed several pleas, including the general issue, to some of which demurrers were sustained and upon others issues were joined.   All the facts seem to have been put in evidence, and as appellee admits in argument the defenses urged could be presented under the general issue, we think it unnecessary to discuss the pleas to which demurrers were sustained.

· Appellant was organized in 1890, under the act of 1879 relating to building and loan associations.   At its meeting to organize it elected Fritze· a director for three years, and adopted a charter and by-laws (in compliance with original section 3 of said act), which were reported to the secretary of State, and a. copy thereof attached to the certificate of organization issued by that officer.   These papers declared the location of the society to be Peoria, in Peoria county, Illinois.   The by-laws provided for amendments at meetings of stockholders.   By the by-laws a quorum at a stockholders' meeting consisted of persons owning or representing a majority of the stock.   At an annual stockholders' meeting held April 21, 1892, 6,213 shares were represented and it was, determined that 6,166 shares constituted a quorum.   At that meeting Fritze offered an amendment

to the by-laws authorizing the board of directors to appoint a manager who, under their direction, should appoint all agents, control and manage the agency system of the society, perform such other duties as the board might require, and attend to all publications, printing and advertising, and whose term of office and compensation should be fixed by written contract with the board, and his compensation paid out of the expense fund. This by-law was adopted at that meeting. Three days later, at the annual directors' meeting, Fritze was elected vice-president for the ensuing year, and he so acted for that year. One week later, at a directors' meeting, a motion was made that by virtue of said new by-law Fritze be appointed manager of agencies for one year from May 2, 1892, and that his compensation "for his services for the year and in liquidation of all claims" be $300 per month, and two cents per share per month during the year on each monthly installment actually paid on each share of all stock subscribed in the twenty-fifth to the thirty-sixth series, inclusive, and that said salary and compensation be payable in sums not less than one cent per share per month on all shares in good standing in the society, and as much more as the expense fund would admit. This was carried, Fritze voting for it with the other directors. A contract was prepared and signed covering these conditions, designating Fritze as manager of agencies, and also binding the society to pay his necessary traveling expenses. It was dated May 2, 1892, and was presented to the board of directors and approved on May 14, 1892, Fritze voting for its approval with the others.

Fritze acted as manager of agencies for appellant from May 1, 1892, to May 1, 1893. Agencies either had been before established or were established by Fritze during said year at Galesburg, Decatur, Monmouth and Rock Island, in Illinois; at Davenport, Burlington and Ottumwa, in Iowa; and at places in Arkansas and elsewhere. Loans were negotiated in those places, and this was done to some extent through Fritze. Fritze terminated his connection with the society May 1, 1893. He was paid by the society upon

said contract for services during said year $3,129.06, and the books of the soceity, as they were kept by those who held office at that time, showed there was still due him as manager of agencies $1,660, and he brought this suit to recover that balance. A jury was waived, proofs were heard and there was a finding and a judgment for plaintiff for $1,660, from which defendant prosecutes this appeal.

Section 5 of the act under which appellant was organized provides that the officers of the society organized thereunder shall consist of president, vice-president, secretary and treasurer, and that the secretary only shall be entitled to compensation, and in such amount as may be provided for in the charter. The enactment that the secretary only should be entitled to compensation was in effect an enactment that the president, vice-president and treasurer should not be entitled to compensation. The object of this act was to provide a system of savings among members, and of loaning those savings from time to time to the members. The scheme was one of mutual co-operation among the members and officers. The common interest of each was evidently relied upon to secure all needed extension of membership. The meaning of the statute was that the system should be inexpensive. The course here pursued, and to all which Fritze was a party, was an evasion of the statute. The statute provided that the vice-president should not have compensation. At a stockholders' meeting, at which a bare quorum was present, on Fritze's motion, the office of manager of agencies was established. Then on his motion at the next directors' meeting Pillsbury was made president and Meyers secretary. Then on Meyers' motion Fritze was made manager of agencies. If Fritze collects the judgment rendered below he will have received for his year's services (not including any traveling expenses), $4,789.06. If the board of directors can do this for the vice-president, they can establish another office for the president and still another for the treasurer, and pay each a fat salary. If the directors possess the power to thus evade the law at all, they will necessarily be tempted to.

evade it for the benefit of each other. The tendency will be to make the favors mutual. We think it self-evident that such a course will quickly absorb the contributions of the shareholders and will ruin any building and loan association. We are of opinion the contract made with Fritze was contrary to the spirit and purpose of the act, and not within the powers granted or implied to the association, and that it is contrary to public policy and good morals to permit the unexecuted part to be enforced. If the service he performed was not a duty pertaining to his office as vice-president, then it was a duty which should have been performed by the president or treasurer, who could not be paid therefor, or by the secretary, who was paid for the services attached to his office. If the society could not pay the president, it would be an evasion of the law for it to pay another to perform his duties. The contract says the payment to be made thereunder is also "in liquidation of all claims," and it is suggested there may have been some former services Fritze had rendered for which the society might legitimately pay him said sum. There is no proof he ever rendered any prior services for which he was entitled to be paid, or had any prior claim, and he was a director of the society from its inception.

Our Supreme Court in Rhodes v. Missouri Savings Co., 173 Ill. 621, quotes approvingly from Endlich on Building Associations, that the proper and legitimate purposes of the creation of such a corporation are " to enable a number of associates to combine and invest their savings to their mutual advantage, so that from time to time any individual among them may receive out of the accumulation of the pittances to which each contributes periodically a sum by way of loan wherewith to buy or build a house, mortgaging it to the association as security for the money borrowed, and ultimately making it absolutely his own by paying off the incumbrances out of his subscriptions. It is only so far as they serve these purposes and are confined to these objects legitimately involved therein that the acts of building associations fall properly within the powers granted. As soon

as they transgress these limits they are *ultra vires.*" Endlich, 2d Ed., Sec. 276.

We are of opinion that the establishment of many agencies in various States, with a large and scattered body of stockholders and of borrowers, pledging property far beyond the personal inspection and control of the officers, was not contemplated by our statute, and that the business in which Fritze was engaged, under this contract, was outside the object for which appellant was created, and that he, a director and vice-president, can not be permitted to profit thereby.

Appellee argues that the book accounts of appellant, which he put in evidence, made a case for him under the common counts, regardless of the contract. We do not concur in this position. The ledger account in evidence showed all appellee's credits thereon were for salary and commissions, and these credits were journalized as being for salary and a percentage on renewals. Appellee's other proof showed he held an office under appellant for which the statute provided he should not receive a salary. On the face of that proof these credits were for that for which the law provided he should not be paid. Appellee could not and did not submit his case upon the books alone, but put the contract in evidence. The contract was a necessary part of his case. (Walker v. Brown, 28 Ill. 378.) In our judgment that contract was illegal and void. Complete execution of such a contract upon one side does not give a right of action under the common counts. (American Strawboard Co. v. Peoria Strawboard Co., 65 Ill. App. 502.) In the case last cited a right to recover under the common counts was asserted, though the contract was illegal. We there held that to allow such a recovery, "would be to practically nullify the statute, and enable parties, by resorting to mere form, shifts and devices, to accomplish indirectly what they have no lawful right to do directly." When the contract in this case was offered in evidence, appellant objected that it was without authority of law and void. The objection was overruled, and appellant excepted. It is assigned for error, among other things, that the court

erred in admitting improper evidence over the objection of appellant; that the finding of the court was not supported by the evidence, and that the court erred in rendering judgment.   Under these assignments we hold the court should not have admitted the contract, and that appellee could not recover without it; that the court should not have found for appellee, and should not have rendered judgment for appellee.

This record raises the further question of law whether the society could pass an amendment to its by-laws, prior to the act of 1893, amending section 3 of the building and loan association act; and also the question of fact whether the proof shows Fritze entitled to the commissions he claimed and whether the expense fund contained $1,660 out of which he can be paid pursuant to his contract; but as we are of opinion that the contract was *ultra vires*, and an evasion of the statute, and that on grounds of public policy plaintiff ought not to be permitted to recover, it seems unnecessary we should pass upon these other questions. Under the circumstances no finding of fact need be incorporated in the judgment here.   Our judgment is not based upon a determination of the facts different from the finding of the Circuit Court, but upon our legal conclusion that the contract was void.   The judgment will be reversed.